VAN SANDS (DAVIS v.). See Case No. 3,-655.

## Case No. 16,875.
### VAN SANTWOOD et al. v. The JOHN B. COLE.

[4 N. Y. Leg. Obs. 373.]

District Court, N. D. New York. July, 1846.

ADMIRALTY JURISDICTION—FEDERAL COURTS—CONTRACTS OF AFFREIGHTMENT—RIVER TRANSPORTATION.

1. A contract of affreightment for the carriage of merchandise from one port or place to another, within the ebb and flow of tide, on a navigable river, is subject to admiralty and maritime jurisdiction of the courts of the United States; and it is immaterial whether the vessel or boat, by means of which the service is to be performed, is propelled by its own motive power, or is towed by another vessel.

2. Thus a suit in the admiralty may be maintained for the nonperformance of a contract for the transportation of flour from the city of Albany to the city of New York, on the Hudson river, in a boat designed for the navigation of the Erie Canal, and usually employed in that business.

[This was a libel by Van Santwood & Redfield against the boat John B. Cole; Miller, claimant.]

Mr. Dodge, for libellants.

Spencer & Kernan, for claimant.

CONKLING, District Judge. This suit is founded on a bill of lading bearing date November 28th, 1845, at Albany. By it, S. Brower, the master of the boat John B. Cole, acknowledged to have received on board his boat, in good order, 650 bbls. of flour, which he promised to deliver, in the like good order, to the libellants in New York. This boat was designed for the navigation of the Erie Canal, and, prior to the date of the bill of lading, had usually, and, as far as appears, uniformly, been employed in that business. She was of about sixty tons burthen, and was of the description of boats known on the Erie Canal under the denomination of "line boats." It was shown by the evidence not to be an uncommon practice for boats of this description, after arriving at Albany with cargoes designed for New

York, to be taken in tow, and thus, with their cargoes, carried to New York by one of the several steamboats employed in towing barges and boats for hire to and fro on the Hudson; and it was in this manner that the Cole performed her voyage to New York in the present instance. Whether, in fact, contracts of affreightment are ever entered into by the owners of line boats for the carriage of flour or other articles from points on the Erie Canal to New York, and thus embracing river as well as canal navigation, does not appear. In this case, a large proportion of the flour on board the Cole had been brought by her to Albany, and then, without being unladen, and along with an additional hundred barrels there taken on board, became the subject of the independent contract on which this suit is founded. After the arrival of the Cole in New York, a delay of two days occurred before her cargo could be discharged, and during this period a storm arose, and (in consequence, as the libellants allege, "of her insufficiency, or the want of due and proper care, or other fault of the master and the persons having charge of her") she became partially filled with water, and the flour was thereby much damaged, and the libellants were obliged to incur extraordinary expense in securing it. It is for the recovery of the damages thus sustained that this suit is instituted. A day or two after the occurrence of the accident, the boat was taken to Jersey City, where she remained until spring, when she returned to the Erie Canal, whither she was followed by the libellants, who reside in New York, and was arrested in Schenectady.

The first question presented for decision arises upon the exception taken by the claimant to the jurisdiction of the court. The extent of the admiralty jurisdiction of the courts of the United States, it is well known, has been the subject of much earnest discussion, and of great diversity of opinion. It depends upon the construction to be given to that clause of the constitution which extends the judicial power of the United States "to all cases of admiralty and maritime jurisdiction." It is unnecessary to review the controversies to which this clause has given rise, or even to advert to the grounds on which they have been maintained. The first thorough examination which the subject underwent was by the late Mr. Justice Story, in the celebrated case of De Lovio v. Boit [Case No. 3,776], decided in 1815, and reported in 2 Gall. In a most elaborate, able, and learned opinion, he maintained that national policy as well as judicial logic required the clause of the constitution to be so construed as to embrace all maritime contracts, torts, and injuries. And under the head of "maritime contracts" (with which alone we are at present concerned) he included "all contracts (wheresoever they may be made or executed, or whatsoever may be the form of the stipulation) which relate to the navigation, business, or commerce of the sea." Among contracts of this description, he expressly enumerates contracts of affreightment. The doctrines of this case were zealously and ably con-

troverted and strenuously resisted. by several of the judges of the supreme court, and especially by Mr. Justice Johnson. But there is reason to believe that they met, even at the time of their promulgation, with the assent of a majority of the members of that court. They have never been repudiated, but, on the contrary, in all the cases depending upon them which have since been decided in the supreme court, they have been substantially adhered to. And in the rules of admiralty practice which have lately been adopted by the court, and published in 3 How. [44 U. S.], they may be considered as in effect affirmed. It is well settled, also, that navigable waters in which the tide ebbs and flows stand upon the same footing with respect to the admiralty jurisdiction over contracts as the high seas; and in the case of Peyroux v. Howard, 7 Pet. [32 U. S.] 324. it was adjudged that rivers in which the tide occasions a regular rise and fall of the water, although the current may not be turned back. are to that extent tide waters. The libel in this case does not, as it ought strictly to have done, allege that the Hudson is a river of this description. But in the case just cited. it was also held that the court might take judicial notice of the notorious geographical fact of the ebb and flow of the tide in a navigable river, and the fact of such ebb and flow in the Hudson was moreover tacitly admitted on the trial.

This, then, being the case of a contract for the transportation on tide water of an important article of commerce, would seem, at the first blush, clearly to fall within the admiralty jurisdiction. It becomes necessary, therefore, now to consider the objections to the jurisdiction of the court as presented by the counsel for the claimant. These objections are founded upon the supposed peculiarity of the case, and refer exclusively to the particular character of the boat in question. It. is denied that this is a maritime contract. because the boat employed in its execution was a canal boat; and also because she was unprovided with any independent means of propulsion. It does not follow, it was argued, because a service is performed on the sea, or on waters within the ebb and flow of the tide, that it is therefore a maritime service. Something more is requisite. The contract must relate to maritime affairs,—to the business of navigation, trade, or commerce. Now, certainly, no one at all acquainted with the subject will deny this. The admiralty jurisdiction as to contracts depends, not upon the locality, but upon the subject-matter of the contract. This is a settled principle. The only difficulty concerning it consists in its application to cases as they arise. This is sometimes a very serious and embarrassing difficulty. It was strongly felt and acknowledged by Judge Hopkinson in the case of Thackarey v. The Farmer [Case No. 13.852]. This case was much relied on by the counsel for the claimant, and, on that account, requires notice. It was a suit in rem for the recovery of wages alleged to be due to the libellants,

as mariners, for services performed on the high seas. In point of fact, the services consisted in bringing wood for fuel across the Delaware river to Philadelphia, from Cooper's creek, in New Jersey, about two miles above the city. The question was whether the case was cognizable in the admiralty. After adverting to the great and increasing frequency of applications for admiralty process to recover wages for services performed on board the river craft, in which little regard was paid "to the character of the use or employment of the vessel,"—"the common river boats, of every size, having become ships or vessels navigating the high seas; their daily trips from shore to shore. voyages on the high seas; and the loading and unloading of wood and similar articles for the market, brought. from places within a few miles of the city, for daily wages, being denominated marine services and maritime contracts,"—the learned judge, yielding to what he considered the necessity of the case, undertakes to ascertain and lay down some principle to serve as a future guide in his court as to the limits of the admiralty jurisdiction over cases of the like nature with that before him. He expressly states. however, that he "did not expect to be able to draw a clear line, which will decide the place of every case that may occur, to be within or without the admiralty jurisdiction," and he in reality contents himself with establishing and endeavoring to illustrate and define the principles to which I have already adverted, and which since the date of this decision, have become familiar, viz.. that tide waters are to be considered as the sea; that the admiralty jurisdiction touching contracts, depends upon their subject-matter; and that it embraces those contracts only which are essentially maritime. The services rendered by the libellants in the case before him, consisting, as already stated, in bringing wood across the Delaware for consumption as fuel. he did not consider to be of this character, and so decided. But I do not find a single argument or illustration in the whole course of his elaborate opinion tending to prove that he would have entertained a doubt of his jurisdiction over a case like the present. On the contrary, he refers to cases occurring on the Delaware, identical in principle with this, so far as the nature and objects of the contract are concerned. in which he had exercised jurisdiction without scruple, and still considered it to be unquestionable. Some of these cases are reported in the volume which contains the case on which I have been commenting. It is true that the Cole had been constructed for the purpose of canal transportation, and, though her tonnage was equal to that of many sloops employed in the coasting trade, she was not well adapted to maritime navigation. But having. in this instance, been employed in this manner, as the instrument by which a contract in itself strictly maritime in its nature was to be executed. I know of no authority or principle to warrant

me in holding her exempt from admiralty process, by reason of her general character as·a line boat on the Erie Canal. If her subjection to this jurisdiction has been inconvenient to the owner, it is an inconvenience which he has incurred by voluntarily using his boat in a business which falls within the scope of the admiralty jurisdiction. In urging this ground of exemption, the counsel dwelt with much emphasis upon the inconveniences and embarrassments which he apprehended 'would result from the assertion of this form of jurisdiction over boats of this description, on account of the intimate connection there was between the business of canal and of river transportation; and hypothetical cases were adduced of contracts for the transportation of merchandise, without transshipment, from certain places on the canal to certain places on the Hudson: and it was asked whether the admiralty jurisdiction was to be extended to these cases also. In order to determine the question of jurisdiction in all cases arising ex contractu, 'he true inquiry, as already stated. is whether the contract is substantially maritime. Thus, if the voyage in which the service has been rendered, or stipulated to be rendered, was performed substantially on the sea or on tide·waters, it is immaterial that its commencement or termination happened to have been at some place beyond the reach of the tide. And, on the other hand, if the voyage was substantially on inland waters above the ebb and flow of tide, the fact that the vessel entered tide waters at one terminus of her voyage is insufficient to confer jurisdiction. The Jefferson,· 10 Wheat. [23 U. S.] 428; Peyroux v. Howard, 7 Pet. [32 U. S.] 324; The Orleans v. Phœbus, 11 Pet. [36 U. S.] 175. It may be admitted, therefore, that cases may occur like those supposed, of a mixed and ambiguous character, in which the question of jurisdiction would be attended with doubt and difficulty. Whether such contracts are in fact ever entered into, I am not informed. It is at least easy to avoid them, and. if found to be inconvenient in practice they would doubtless be abandoned. The present case, however, involves no such embarrassment. The stipulated service was to be performed on tide waters alone. But it is sufficient to say that arguments drawn ab inconvenienti ought to have no influence on the judgment of a judicial tribunal upon a question like this, otherwise clear. Courts are no more at liberty to decline the exercise of powers with which they are really invested, than they are to assume those which do not belong to them.

With respect to the remaining objection to the jurisdiction of the court. touching the manner in which the Cole was moved forward on her voyage, it is. as far as I am aware, wholly novel, and I think it is no less untenable. The allegation is that motion having been communicated to this boat by the power of traction, and by means of another self-moving vessel, she was not. in the eye of the maritime law, a ship or vessel subject to the admiralty lien; and it was argued that the lien attached, if at all, to the vessel by· which she was towed. The objection admits of a ready answer. The proposition that the Cole is. not a vessel, is a mere assumption, to which it is believed no judicial tribunal, or elementary writer upon maritime law, has ever afforded the least countenance. In the celebrated case of Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1, it was insisted that steamboats were not vessels, because they were not propelled by wind and sails. But the objection was summarily repudiated by the court, on the ground that the law "does not look to the principle by which vessels are moved." In the case of Thackarey v. The Farmer, already cited, and so much relied on by the counsel for the claimant. Judge Hopkinson expressly states that the admiralty jurisdiction does not "depend on the manner in which the vessel is equipped, with or without sails; nor upon the power by which she may be propelled. by sails, by oars, or by steam." In the bill of lading, the Cole is spoken of and treated as a vessel. Its language is, "Shipped by M. Barnes, Agt., on board boat J. Cole, Capt. S. .Brower." To give effect to the distinction insisted on; to treat the Cole, not as a ship, but, in the language of the claimant's ·counsel, as a mere "store room,"—would be inconsistent with the nature of the contract, and at variance with its terms.

As to the suggestion that the suit ought to have been against the towing vessel, it is difficult to believe that it could have been well considered. The suit is founded upon a contract, and is brought to recover damages for its nonperformance. But the owners of the tow-boat, as such, were not parties to this contract, and are not therefore responsible for its fulfillment. They entered into no engagement to convey the flour in question to New York, but to tow the Cole, without reference to her cargo. This engagement they were bound to perform. But the contract having been made by them, not with the owners of the flour, but with the owner of the Cole, he alone would have been entitled to claim damages in case of their delinquency. Whether in that case he could have resorted to the admiralty for redress, is a question which it is unnecessary to discuss. In point of fact, however, the contract was fulfilled by the exact performance of the stipulated service, and the damages claimed accrued afterwards, from causes wholly independent of the towing service.

My judgment. therefore, is that the admiralty jurisdiction of the court extends to this case; and I have been led into a formal examination of the question. not because I have, at any time, entertained any serious doubt upon the subject, but rather out of respect to the opposite convictions so confidently stated, and doubtless no less sincerely entertained. by the distinguished and able coun-

sel for the claimant, and for the purpose of more effectually correcting similar misapprehensions, should they be entertained by others.